IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mary Beth Nick, | ) |
|     Plaintiff, | ) Civil Action No. _____ |
| vs. | ) |
| Medtronic, Inc.; | ) |
| Medtronic, USA, Inc.; | ) |
| Medtronic Puerto Rico Operations Co.; and | ) |
| Medtronic Logistics, LLC. | ) |
|     Defendants. | ) |

**NOTICE OF REMOVAL**

Defendants Medtronic, Inc. and Medtronic USA, Inc. (collectively, "Medtronic Defendants"),[1] pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, remove the above-styled action, *Nick v. Medtronic, Inc., et al.*, Case No. 2021-L-008140 ("State Court Action"),[2] from the Circuit Court of Cook County, Illinois, County Department, Law Division, to the United States District Court for the Northern District of Illinois, Eastern Division. There is complete diversity between Plaintiff Mary Beth Nick and Medtronic Defendants, as well as between the improperly served

---

[1] Plaintiff served Medtronic, Inc. and Medtronic USA, Inc. via their registered agent on October 28, 2021. She also tried to improperly serve Medtronic Puerto Rico Operations, Inc. at the same agent, but that service was rejected as improper. To Medtronic's knowledge no service has been attempted or accomplished as to Medtronic Logistics, LLC. The consent of improperly served or unserved defendants is unnecessary to accomplish removal; however, to avoid any doubt, and without waiving any defenses, including, but not limited to, the failure of service of process, all Medtronic defendants named consent to removal of this action. Additionally, no defendant whether served or unserved is a citizen of Illinois for purposes of determining diversity of citizenship.

[2] The pleading caption for Plaintiff's Summons and Complaint (attached as **Exhibit A**), includes in its header, "United States District Court" for the Northern District of Illinois; however, the case was filed in Cook County, Illinois with the above-captioned case number.

Medtronic Puerto Rico Operations Co. and the unserved Medtronic Logistics, LLC. Thus, this Court has original jurisdiction over this action under 28 U.S.C. § 1332.

## I. INTRODUCTION

1. Plaintiff initiated this action in Illinois state court, filing an original Complaint in the Circuit Court of Cook County, Illinois on August 12, 2021. *See* Summons and Complaint, attached as **Exhibit A**.

2. On October 28, 2021, Medtronic USA, Inc. and Medtronic, Inc. were each served a copy of the Summons and Amended Complaint. *See* Process Delivery Details for Medtronic USA, Inc., attached as **Exhibit B**, and Process Delivery Details for Medtronic, Inc., attached as **Exhibit C**.[3]

## II. NATURE OF THE CASE

**A. Factual Background**

3. Plaintiff brings a product liability action, alleging both negligence and strict liability for injuries allegedly suffered from an "implantable infusion pump system manufactured, sold, and monitored by Defendants . . ." (Compl. ¶ 1.)

4. Plaintiff began to take baclofen approximately seven years ago to treat spasticity but, after suffering side effects from oral ingestion, decided to undergo an epidural baclofen trial on October 16, 2018, and received a Medtronic SynchroMed® II programmable pump system ("SynchroMed® II") on October 17, 2018. (Compl. ¶¶ 11-13.) The SynchroMed® II Infusion System is a battery-operated, FDA pre-market approved Class III medical device that treats certain

---

[3] As noted previously, Plaintiff tried to improperly serve Medtronic Puerto Rico Operations Co. but that service was rejected by the service agent. *See* **Exhibit D.** No service has been attempted or accomplished as to Medtronic Logistics, LLC. Neither Medtronic Puerto Rico Operations Co. nor Medtronic Logistics, LLC waives service of process requirements in this case.

medical conditions by delivering medication (*i.e.*, morphine sulfate or baclofen) via an implanted pump and catheter directly to the "intrathecal" area where fluid flows around the spinal cord.

5. Following implantation, and over the course of the next nine months, Plaintiff's treating physician continuously recalibrated the pump to increase dosage; however, on August 12, 2019, interrogation of the pump allegedly exposed a discrepancy between the amount of residual volume of baclofen from interrogation (3.1 mL) versus the amount of baclofen actually withdrawn from the port of the pump (20 mL). (Compl. ¶ 15.) Subsequent testing performed on December 18, 2019, allegedly confirmed a discontinuity of the catheter. (Compl. ¶ 16.)

6. On February 5, 2020, Plaintiff's catheter was revised and her SynchroMed® II was replaced with a new SynchroMed® II. And during the procedure, the physician allegedly noted a severed catheter with significant occlusion. (Compl. ¶ 18.)

### B. Plaintiff's Claims

7. Plaintiff alleges Medtronic Defendants had a duty to reasonably "package, label, and market" the SynchroMed® II in a way that reasonably warned healthcare providers and users, including Plaintiff, of the dangers associated with the SynchroMed® II. (Compl. ¶ 23.)

8. Plaintiff alleges Medtronic Defendants had a duty to warn healthcare providers and users, including Plaintiff, of the complete dangers of the SynchroMed® II or instruct on the proper use. (Compl. ¶ 24.)

9. Plaintiff alleges Medtronic Defendants had a duty to exercise reasonable care in the "preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion, and sale" of the SynchroMed® II, for which it knew, or should have known, carried a danger that it concealed from users, including Plaintiff. (Compl. ¶ 25-27.) Plaintiff also alleges Medtronic Defendants negligently failed to warn healthcare providers and users of that danger.

(Compl. ¶ 28.)

10. Plaintiff alleges Medtronic Defendants had a duty to comply with all applicable codes and regulations, including those from the FDA or the State of Illinois, but failed to do so. (Compl. ¶ 30, 32.)

11. Plaintiff alleges Medtronic Defendants were negligent in the "preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion, and sale" of the SynchroMed® II. (Compl. ¶ 31.)

12. Plaintiff alleges Medtronic Defendants negligently failed to "research, test, design, develop, manufacture, control, inspect, monitor, and/or otherwise take reasonable precautions in the design, production, and manufacture" of the SynchroMed® II. (Compl. ¶ 33.)

13. Plaintiff alleges she was in the class of persons Medtronic Defendants should reasonably foresee as subject to harm for any defective product. (Compl. ¶ 34.)

14. Plaintiff alleges the SynchroMed® II, as "designed, manufactured, and supplied" was unreasonably dangerous and directly and proximately caused Plaintiff's alleged injuries. (Compl. ¶ 35-39.)

15. Medtronic Defendants deny all allegations.

## III. SUBJECT MATTER JURISDICTION EXISTS PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446.

16. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

### A. There Is Complete Diversity of Citizenship.

17. Plaintiff is a citizen of Illinois. (*See* Compl. ¶ 5-6); 28 U.S.C. § 1332(c)(2).

18. Medtronic Defendants are not citizens of Illinois. Medtronic, Inc. is incorporated

4

under the laws of the State of Minnesota, with its principal business address at 710 Medtronic Parkway, LC 355, Minneapolis, Minnesota 55432. Medtronic USA, Inc. is also incorporated under the laws of the State of Minnesota, with its principal business address at 710 Medtronic Parkway, LC 355, Minneapolis, Minnesota 55432. Both Medtronic, Inc. and Medtronic USA, Inc. are therefore citizens of Minnesota. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities").

19. While not properly served, Medtronic Puerto Rico Operations Co. is a corporation organized under the laws of the Cayman Islands, B.W.I. with its principal place of business in Puerto Rico. Medtronic Puerto Rico Operations Co. is therefore a citizen of the Cayman Islands and Puerto Rico. 28 U.S.C. §1332(c)(1) and §1332(e).

20. While not yet served, Medtronic Logistics, LLC is a limited liability company organized under the laws of Minnesota with its principal business address at 710 Medtronic Parkway, LC 300, Minneapolis, Minnesota 55432. The sole member of Medtronic Logistics, LLC is Medtronic USA, Inc., which is a corporation organized under the laws of Minnesota with its principal business address at 710 Medtronic Parkway, LC 300, Minneapolis, MN 55432. Because Medtronic USA, Inc. is therefore a citizen of Minnesota, Medtronic Logistics, LLC is also a citizen of Minnesota. 28 U.S.C. § 1332(c)(1).

21. Complete diversity of citizenship exists between the parties as Medtronic Defendants are not citizens of Illinois, the state in which this action was brought and the state

residency and citizenship of Plaintiff. *See* 28 U.S.C. § 1441(b)(2).

  **B.**  **The Amount in Controversy Requirement Is Met.**

  22.  Plaintiff's Complaint lacks a specific ad damnum, which is unsurprising because Illinois, like other states within this Circuit, generally prohibit such pleading. *See* 735 ILCS 5/2-604.2 ("In a personal injury action, a party *may not claim an amount of money unless necessary to comply with the circuit court rules* about where a case is assigned. . . . [I]f a complaint is filed that contains an amount claimed . . . the complaint shall be dismissed without prejudice on the defendant's motion or on the court's own motion."). *See also Tooley v. Washington Group International*, No. 08-1084, at *2 n.2 (C.D. Ill. Jan. 13, 2009) ("Illinois and other states, such as Indiana, have enacted statutes prohibiting, in varying degrees, statements in complaints which disclose the amount of money a plaintiff seeks." (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006)).

  23.  But where a Complaint (as here), "does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 551 (2014) (citing 28 U.S.C. § 1446(c)(2)(A)). The notice "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Owens*, 135 S. Ct. at 554. *See also Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 742-43 (N.D. Ill. 2011) ("Defendants have plausibly explained how the stakes exceed $75,000"). And unless contested by the plaintiff or questioned by the court, "the defendant's amount-in-controversy allegation should be accepted." *Owens*, 135 S. Ct. at 553. If the defendant's allegations are challenged, however, removal is still proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000. *Id.* at 554; 28 U.S.C. § 1446(c)(2)(B).

24. When weighing whether the amount in controversy is plausible, the Seventh Circuit recognizes a "good faith estimate." *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) (When a Plaintiff "provides little information about the value of her claims . . . a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence . . . The plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'"); *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011) (If the defendant presents a good-faith estimate of the stakes, and "that estimate exceeds the jurisdictional minimum, it controls and allows removal unless recovery exceeding the jurisdictional minimum would be legally impossible."); *Walton v. Bayer Corp.*, 692 F. Supp. 2d 1025, 1039 (S.D. Ill. 2010) ("If the allegations are not specific, the Court must then look to whether Defendant's estimate of the amount in controversy in this case was "plausible and supported by a preponderance of the evidence.").

25. Although Medtronic Defendants deny any liability for Plaintiff's alleged injuries and damages, the amount in controversy alleged clearly exceeds $75,000. Plaintiff alleges she "suffered substantial medical expenses, loss of quality of life, severe pain and suffering, severe physical impairment," (Compl. ¶ 21), and now seeks damages for both "past and future" medical treatment, mental anguish, physical limitations, pain and suffering, physical scarring, loss of enjoyment of life, and lost wages and wage-earning capacity, (Compl. ¶ 40(a)-(g)). These allegations, taken together, more than plausibly show that the amount in controversy exceeds $75,000, exclusive of costs and interest.

26. Courts across the country, including those of this circuit, have repeated found serious physical injuries, such as those alleged by Plaintiff, satisfy the amount-in-controversy requirement. *See McCoy by Webb v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002)

("[C]ourts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount") (collecting cases). *See also*, *e.g.*, *Marsar v. Smith & Nephew, Inc.*, 950 F. Supp. 2d 1228, 1229-30 (M.D. Fla. 2013) (denying motion to remand in wrongful-death products liability claims where plaintiff sought unspecified damages in excess of $15,000); *Green v. Metal Sales Mfg. Corp.*, 394 F. Supp. 2d 864, 867 (S.D.W.V. 2005) (although complaint was "silent as to any specific amount of monetary damages," allegations of severe physical injury and economic loss were adequate to satisfy the amount-in-controversy requirement); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding complaint "obviously asserts a claim exceeding $75,000" where plaintiff sought damages for alleged "serious and life-threatening medical conditions" due to the use of a prescription medication).

27. Medtronic Defendants also need not wait and confirm through discovery in state court that the jurisdictional amount is satisfied. Indeed, "a defendant who wishes to remove a case to federal court cannot 'wait for discovery responses that simply confirm what was obvious from the face of the complaint; in such cases, defendants are not insulated from a remand to state court.' It is not the law that 'cases are not removable until there has been an absolute affirmation via discovery . . . that more than $75,000 [is] in issue.'" *Fields v. Jay Henges Enters., Inc.*, No. 06-323-GPM, 2006 WL 1875457, at *3 (S.D. Ill. June 30, 2006) (quoting *McCoy*, 226 F. Supp. 2d at 941). Rather, "when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate. Otherwise, a defendant could wrongly be denied the removal to which it is entitled." *Roe v. Michelin N. Am., Inc.*, 613

F.3d 1058, 1064 (11th Cir. 2010). *See also Century Assets Corp. v. Solow*, 88 F. Supp. 2d 659, 661 (E.D. Tex. 2000) (holding that a complaint "can facially state a claim over the jurisdictional amount when there are no numbers in the [complaint] at all," and that removal was untimely where it was apparent from the complaint that an amount sufficient to satisfy the requirements of diversity jurisdiction was in controversy) (emphasis in original) (collecting cases).

28. Based on the severe injury allegations, lost past and future income, pain and suffering, and substantial medical bills alleged, the amount in controversy as to Plaintiff's claims against Medtronic Defendants exceeds $75,000 exclusive of interest and costs.

29. Medtronic Defendants have presented a good-faith estimate of the amount in controversy, and recovery exceeding the jurisdictional minimum is possible; therefore, removal is appropriate.

### IV. PROPRIETY OF REMOVAL

30. For these reasons, this Court has jurisdiction over this action based on diversity of citizenship between the Plaintiff and Medtronic Defendants. *See* 28 U.S.C. §§ 1332 and 1441.

31. The amount in controversy requirement is satisfied because Plaintiff pleads a good-faith estimate of the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

32. Medtronic Defendants are not citizens of Illinois, where the State Court Action was filed and where Plaintiff is a citizen. *See* 28 U.S.C. § 1441(b)(2).

33. This Notice is timely because it was filed within (a) thirty days after receipt by Medtronic Defendants from which Medtronic Defendants first learned that the case was removable and (b) one year of the filing of the State Court Action. *See* 28 U.S.C. §§ 1446(b)-(c).

34. The United States District Court for the Northern District of Illinois is the federal

judicial district encompassing the Circuit Court of Cook County, Illinois, where this suit was originally filed. *See* 28 U.S.C. § 93(a)(1). Venue is therefore proper in this district under 28 U.S.C. § 1441(a).

35. Thus, this action may be removed from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a).

36. A copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of Cook County, Illinois and has been served on Plaintiff as required by 28 U.S.C. § 1446(d).

37. Medtronic Defendants reserve the right to amend or supplement this Notice of Removal.

**WHEREFORE**, notice is given that this action is removed from the Circuit Court of Cook County, Illinois, Law Division to the United States District Court for the Northern District of Illinois, Eastern Division.

Dated this 22nd day of November, 2021.

By: /s/ *Gregory E. Ostfeld*
Gregory E. Ostfeld (ARDC No. 6257163)
**GREENBERG TRAURIG, LLP**
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 476-5056
Fax: (312) 456-8435
ostfeldg@gtlaw.com

Sara K. Thompson*
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road, NE, Suite 2500
Atlanta, GA 30305
Tel: (678) 553-2100
Fax: (678) 553-2393
thompsons@gtlaw.com

**Pro Hac Vice Application to be submitted*
*Counsel for Medtronic, Inc.*

10

## **CERTIFICATE OF SERVICE**

I, Gregory E. Ostfeld, an attorney, hereby certify that on November 22, 2021, I caused a copy of the foregoing Notice of Removal, to be served upon the following party via overnight mail and E-Mail:

Mary Beth Nick, Plaintiff pro se
402 Pleasant Drive
Schaumburg, IL 60193
E-Mail: mbnick@sbcglobal.net

/s/ *Gregory E. Ostfeld*
Gregory E. Ostfeld