Civil Action Cover Sheet - Case Initiation  (12/01/20) CCL 0520

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Mary Beth Nick

v.

Medtronic, Inc.; Medtronic USA, Inc.; Medtronic Puerto Rico Operations, Co.; and Medtronic Logistics, LLC

No. _____

2021L008140
CALENDAR/ROOM R
TIME 00:00
Product Liability

## CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ☒ Yes ☐ No

(FILE STAMP)

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☒ 049 Product Liability
- ☐ 051 Construction Injuries (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: Mary Beth Nick
(Pro Se)

### COMMERCIAL LITIGATION
CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action (Please specify below.**)
- ☐ 075 Other Commercial Litigation (Please specify below.**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** _____

Primary Email: mbnick@sbcglobal.net

Secondary Email: _____

Tertiary Email: _____

**Pro Se Only:** ☒ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the Clerk's Office for this case at this email address: mbnick@sbcglobal.net

IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Page 1 of 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARY BETH NICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MEDTRONIC, INC.; | ) |
| MEDTRONIC USA, INC.; | ) |
| MEDTRONIC PUERTO RICO | ) |
| OPERATIONS, CO.; and | ) |
| MEDTRONIC LOGISTICS, LLC; | ) |
| | ) |
| Defendants | ) |

## COMPLAINT

COMES NOW Plaintiff, Mary Beth Nick, pro se, and hereby complains against the Defendants and requests a trial by jury as follows:

## INTRODUCTION

1. This is a product liability action brought by Plaintiff, Mary Beth Nick (hereinafter "Ms. Nick"), seeking relief for the Defendants' negligence and strict liability arising from injuries sustained as the direct and proximate result of a defective, implantable infusion pump system manufactured, sold, and monitored by Defendants, Medtronic, Inc.; Medtronic USA, Inc.; Medtronic Puerto Rico Operations, Co.; and Medtronic Logistics, LLC ("Medtronic"); and/or its employees or agents, to Ms. Nick.

2. Implantable infusion pump systems include programmable pumps, medical devices that are surgically implanted under the skin, typically in the abdominal region. In the systems, these programmable infusion pumps are connected to implanted catheters and are used to deliver medications and fluids within the body. Implantable infusion pumps are periodically refilled with medications or fluids by a health care provider. Implantable infusion pumps may be used to treat chronic pain, muscle spasticity, and many other diseases or conditions.

3. Medtronic is one of the world's largest medical device companies, and it has manufactured, sold, and monitored a number of defective, implantable infusion pumps over the past thirty (30) years. During this time period, Medtronic has been the subject of numerous warnings, recalls, and complaints regarding their defective infusion pumps through the Food and Drug Administration ("FDA").

## JURISDICTION AND VENUE

4. This action seeks relief in the form of monetary damages Ms. Nick suffered as a direct and proximate result of a defective, implantable infusion pump system manufactured, sold to her, and monitored by Medtronic.

5. Jurisdiction is conferred upon this Court by the Illinois Compiled Statutes (ILCS), codified at 735 ILCS 5/2-209. At all times relevant hereto, Ms. Nick was a resident of Cook County, Illinois. Further, at all times relevant hereto, Medtronic was actively selling implantable infusion pumps and otherwise conducting business within the State of Illinois.

6. Venue is proper to Cook County pursuant to the Illinois rules of trial procedure, as the judicial district in which Ms. Nick resides and has resided at all times relevant hereto.

## JURY DEMAND

7. Plaintiff demands a trial by jury in this action on each of her claims set forth herein.

## PARTIES

8. At all times relevant hereto, Plaintiff Mary Beth Nick was a resident of Cook County, located within the State of Illinois, and has continuously resided at either 402 Pleasant Drive, Schaumburg, IL 60193, or 4949 N. Whipple Street, Chicago, IL 60625.

9. At all times relevant hereto, Defendant Medtronic, Inc., was engaged in the sale and monitoring of implantable infusion pumps in the State of Illinois. Medtronic, Inc.'s Principal Executive Office is located at 20 Lower Hatch Street, Dublin 2, Ireland. Medtronic, Inc.'s Operational Headquarters is located at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Further, at all times relevant hereto, Medtronic was duly authorized to conduct business within the State of Illinois, and was actively engaged, directly and/or through its employees and agents, in business operations within the State of Illinois.

## STATEMENT OF FACTS

10. Plaintiff incorporates and realleges by reference rhetorical paragraphs 1 through 9 as if they were set forth fully herein.

11. Ms. Nick is a 62-year-old woman diagnosed with multiple sclerosis in 2000. About seven years ago, Ms. Nick began to experience spasticity, a condition in which there is an abnormal increase in muscle tone or stiffness. She began to take baclofen, the medication typically prescribed to treat spasticity. Ms. Nick found, though, that she could not tolerate side effects such as nausea, dizziness and fatigue, which resulted when the baclofen was administered orally through tablets or oral solution.

12. Ms. Nick consulted with her multiple sclerosis neurologist and learned that it was possible

to have the baclofen administered intrathecally, directly into the spinal theca, through the use of a programmable intrathecal pump system. She learned that much smaller doses of baclofen would be required for intrathecal administration than would be required for oral administration, thus limiting the likelihood of the side effects she had been experiencing with the baclofen tablets and oral solution.

13. On October 16, 2018, Ms. Nick had an epidural baclofen trial, and on October 17, 2018, she had a Medtronic SynchroMed II programmable pump system (pump model 8637-40, serial number NGV607403H) implanted by Sepehr Sani, MD, of Rush University Medical Center (RUMC) in Chicago, Illinois.

14. Following the implantation of the SynchroMed II programmable pump system, Ms. Nick worked with physiatrist Daniel Bunzol, MD, of RUMC on intrathecal baclofen dosing. For approximately nine months, Dr. Bunzol steadily recalibrated the SynchroMed II programmable pump to increase the dosage of baclofen delivered to the spinal theca, but Ms. Nick failed to experience easing of her spasticity.

15. On August 12, 2019, when Dr. Bunzol was refilling the pump, interrogation of the pump revealed residual volume of 3.1 mL, but when the needle was inserted into the fill port of the pump, it withdrew 20 mL of residual baclofen. At no time had the pump sounded an alarm to indicate any problem. Dr. Bunzol talked to Medtronic sales representative Steve Willuweit, who recommended referral to Sandeep Amin, MD, of RUMC to troubleshoot the problem of interrogation vs. actual residual volume.

16. On December 18, 2019, Dr. Amin performed a side-port myelogram under fluoroscopic guidance to diagnose the problem with the Medtronic SynchroMed II programmable pump system. When the contrast agent was injected into the side port of the Medtronic SynchroMed II programmable pump, the contrast agent pooled under the pump itself, confirming discontinuity of the catheter.

17. Immediately following the side-port myelogram, while in the recovery area of the hospital, Ms. Nick mentioned to Dr. Amin that she had been experiencing months of symptoms of postural orthostatic intolerance. A few weeks prior to the side-port myelogram, she had undergone a tilt-table test as part of an effort to diagnose whether she had developed postural orthostatic tachycardia syndrome. At that point, Dr. Amin explained that the postural intolerance may have come from spinal fluid leaking out of the severed catheter.

18. On February 5, 2020, Dr. Amin revised the catheter under fluoroscopic guidance and replaced the intrathecal pump. On opening the pocket site, Dr. Amin noted completely severed catheter distal to the sutureless connector piece that attaches to the pump. On the lateral edge of the pocket he noted extensive twirling of the catheter and knotting with several centimeters of the catheter intertwined and scarred down. Dr. Amin then did revision repair of the catheter and replaced the old pump with a new Medtronic SynchroMed II pump (model 8637-40, serial number

NGV711359H). All the explant specimens remain in the custody of the RUMC Pathology Department.

19. The SynchroMed II infusion pump, model 8637-40, implanted into Ms. Nick, was designed, manufactured, marketed, and sold by Defendant Medtronic.

20. The SynchroMed II infusion pump, model 8637-40, implanted into Ms. Nick, was monitored and periodically maintained by and/or under the supervision of Medtronic employees, agents, and/or representatives.

21. As a direct and proximate result of the defective condition of the MedtronicSynchroMed II infusion pump, model 8637-40, implanted into Ms. Nick, Ms. Nick suffered substantial medical expenses, loss of the quality of life, severe pain and suffering, severe physical impairment, and other damages.

## CAUSES OF ACTION

22. Plaintiff incorporates and realleges by reference rhetorical paragraphs 1 through 21 as if they were set forth fully herein.

23. At all times relevant hereto, Defendant Medtronic had a duty to reasonably package, label, and market the SynchroMed II implantable infusion pump, model 8637-40, in a manner that reasonably warned healthcare providers and users, including Ms. Nick, of the dangers of using the product as it was intended and marketed to be used.

24. At all times relevant hereto, Defendant Medtronic had a duty to exercise reasonable diligence in giving reasonably complete instructions for proper use of the product to health care providers and users, including Ms. Nick, and by making reasonably complete instructions and warnings about the product available to healthcare providers and users, including Ms. Nick.

25. At all times relevant hereto, Defendant Medtronic had a duty to exercise reasonable care, and to comply with the existing standards of care, in its preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion, and sale of implantable infusion pump systems, which Defendant Medtronic introduced into the stream of commerce and sold in the State of Illinois, including a duty to ensure that users would not suffer unreasonable, dangerous, and/or severe physical and emotional harm.

26. At all times relevant hereto, Defendant Medtronic prepared, designed, researched, developed, manufactured, inspected, labeled, marketed, promoted, and sold the SynchroMed II implantable infusion pump, model 8637-40, with a concealed danger to users, including Ms. Nick.

27. At all times relevant hereto, Defendant Medtronic knew or reasonably should have known of the concealed danger.

28. At all times relevant hereto, Defendant Medtronic was negligent in failing to reasonably and

adequately warn healthcare providers and users, including Ms. Nick, of that danger.

29.     At all times relevant hereto, Defendant Medtronic had a duty to exercise reasonable care, and to comply with the existing standards of care, in its preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion, and sale of implantable infusion pump systems, which Defendant Medtronic introduced into the stream of commerce and sold in the State of Illinois, including a duty to ensure that users would not suffer unreasonable, dangerous, and/or severe physical and emotional harm.

30.     At all times relevant hereto, Defendant Medtronic had a duty to comply with all applicable codes, standards, regulations, testing standards and requirements, research standards, and requirements, quality control standards and requirements, inspection standards and requirements, labeling stands and requirements, promotion standards and requirements, and/or specifications established, adopted, promulgated, or approved by the United States, the State of Illinois; or by any agency of the United State or Illinois including the FDA.

31.     At all times relevant hereto, Defendant Medtronic was negligent in failing to exercise reasonable care and to comply with existing standards of care in its preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion, and sale of implantable infusion pump systems.

32.     At all times relevant hereto Defendant Medtronic was negligent in failing to exercise reasonable care and in failing to reasonably and adequately comply with applicable codes, standards, regulations, testing standards and requirements, research standards and requirements, quality control standards and requirements, inspection standards and requirements, labeling stands and requirements, promotion standards and requirements, and/or specifications established, adopted, promulgated, or approved by the United States, the State of Illinois, or by any agency of the United State or Illinois including the FDA.

33.     At all times relevant hereto, Defendant Medtronic was negligent in failing to reasonable and adequately research, test, design, develop, manufacture, control, inspect, monitor, and/or otherwise take reasonable precautions in the design, production, and manufacture of its implantable infusion pumps systems to prevent unreasonable injuries to users, including Ms. Nick.

34.     Plaintiff is in the class of persons that Defendant Medtronic should reasonably foresee as being subject to the harm caused by its defective implantable infusion pump systems insofar as Ms. Nick was the type of person for whom Defendant's implantable pump systems were intended to be used.

35.     At all times relevant hereto, Defendant Medtronic was engaged in the business of selling implantable infusion pump systems. Defendant Medtronic designed, manufactured, and supplied implantable infusion pump systems and placed them into the stream of commerce by selling implantable infusion pump systems in a defective and unreasonably dangerous condition such that the foreseeable risks of harm exceeded the intended benefits associated with the design and/or formulation of the product.

36. The implantable infusion pump system was expected to, and did, reach Plaintiff Ms. Nick without substantial alteration in the condition in which the product is sold by Defendant Medtronic.

37. At all times relevant hereto, the implantable infusion pump system manufactured by Defendant Medtronic was in an unreasonably dangerous and defective condition beyond the extent contemplated by ordinary health care providers and patients, including Ms. Nick, with ordinary knowledge regarding these products.

38. At all times relevant hereto, Defendant Medtronic knew or reasonably should have known of the unreasonably dangerous and defective condition of its implantable infusion pump systems which it designed, manufactured, and sold to healthcare providers and users, including Ms. Nick.

39. The unreasonably dangerous product defects alleged herein directly and proximately caused Ms. Nick's injuries and damages including, without limitation, substantial medical expenses, loss of the quality of life, severe pain and suffering, severe and physical impairment, and other damages.

## DAMAGES

40. Plaintiff is seeking the following actual damages which are proximately caused by Defendants' wrongful conduct:

   a. Past and future medical treatment;
   b. Past and future mental anguish;
   c. Past and future physical limitations;
   d. Past and future pain and suffering;
   e. Past and future physical scarring;
   f. Lost wages and wage-earning capacity; and
   g. Past and future loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, as follows, appropriate to each cause of action alleged and as appropriate to the particular standing of the Plaintiff:

   i. General damages in an amount that will conform to proof at time of trial;
   ii. Special damages in an amount within the jurisdiction of this Court and according to proof at the time of trial;
   iii. Loss of earnings and impaired earning capacity according to proof at the time of trial;
   iv. Medical expenses, past and future, according to proof at the time of trial;
   v. For past and future mental and emotional distress, according to proof;
   vi. Damages for loss of care, comfort, society, and companionship in an amount within the jurisdiction of this Court and according to proof;
   vii. For punitive or exemplary damages according to proof;

  viii. Restitution, disgorgement of profits, and other equitable relief;
  ix. Injunctive relief;
  x. Attorney's fees;
  xi. For costs of suit incurred herein;
  xii. For pre-judgment interest as provided by law; and
  xiii. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,


By: /s/ Mary Beth Nick
Mary Beth Nick, Plaintiff pro se
402 Pleasant Drive
Schaumburg, IL 60193
(630-529-5616)
mbnick@sbcglobal.net